IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TODD WILLIAM MARSHALL,

                         Plaintiff,

            v.                                            OPINION and ORDER

KILOLO KIJAKAZI,                                          21-cv-98-jdp
Acting Commissioner of Social Security,

                         Defendant.

---

Plaintiff Todd William Marshall seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Marshall was not disabled within the meaning of the Social Security Act. Marshall challenges the decision of administrative law judge (ALJ) Laura Chess on numerous grounds, but these can be grouped into three broad categories: (1) her handling of the opinion evidence; (2) her failure to account for certain limitations in the residual functional capacity (RFC) assessment; and (3) her consideration of Marshall's subjective complaints.[1]

Marshall hasn't shown that the ALJ committed any reversible errors. Marshall has pointed to evidence that could support a finding of disability, but the ALJ considered that evidence and gave valid reasons for reaching a different conclusion. That was all the ALJ was

---

[1] Marshall also contends that the ALJ's decision was invalid under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). But this court has rejected that argument multiple times. S*ee Kreibich v. Kijakazi*, No. 20-cv-1045-bbc, 2022 WL 538261, at *6 (W.D. Wis. Feb. 23, 2022) (collecting cases). And Marshall cites no contrary authority from the Seventh Circuit or anywhere else, so it isn't necessary to consider that issue again.

required to do under the deferential standard of review, so the court will affirm the ALJ's decision.

BACKGROUND

Marshall sought benefits based on both physical and mental impairments, alleging disability beginning in August 2012, when he was 45 years old. R. 16, 31.[2] In a 19-page decision issued in July 2020, the ALJ found that Marshall suffered from numerous severe impairments. Marshall's appeal focuses on his obesity and other impairments related to his knees and back (degenerative disc disease of the spine, right knee, and right ankle, left meniscus tear and instability of the knee joint, loose bodies in the left ankle), heart and lungs (asthma, coronary artery disease, and cardiomyopathy), and his mental health (anxiety and depression). R.16. After finding that Marshall's impairments weren't severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to Marshall the RFC to do the following:

- lift and carry 20 pounds occasionally and 10 pounds frequently;

- stand and walk for six hours and sit for six hours in an eight-hour workday;

- occasionally stoop and climb ramps and stairs;

- occasionally balance on narrow, slippery, or erratically moving surfaces;

- frequently reach, handle, and finger with both upper extremities;

- have occasional exposure to dust, fumes, odors, gases, and poor ventilation;

- understand, remember, and carry out simple instructions;

- make simple, work-related decisions;

---

[2] Record cites are to the administrative transcript located at Dkt. 14.

- tolerate occasional changes in a routine work setting; and

- have occasional interaction with co-workers and the public.

The ALJ also found that Marshall cannot do the following: climb ladders, ropes, or scaffolds; kneel, crouch, or crawl; be exposed to extreme heat or humidity; work at unprotected heights, in the vicinity of uncovered unguarded moving machinery or in "very loud" environments, as defined by the Selected Characteristics of Occupations; work at a production rate pace, such as work on an assembly line. R.19.

Based on the testimony of a vocational expert, the ALJ found that Marshall was not disabled because he could perform jobs that are available in significant numbers in the national economy, such as inspector, small products assembler, and office helper. R. 32. The Appeals Council declined review. R. 1–6. Marshall now appeals to this court.

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Marshall asserts that the ALJ committed errors that fall into three categories. The court will consider each category in turn.

**A. Medical opinions**

The ALJ considered numerous medical opinions on Marshall's physical and mental limitations. The medical sources provided the following opinions about Marshall's physical limitations:

- In January 2015, Kauseruzzaman Khan, a physician, conducted a consultative examination. Khan concluded that Marshall had "some difficulty" walking and standing but no restrictions for a sitting job. R. 734.

- In January and February 2015, Harpreet Khurana and Andrew Przbyla, state agency physicians, conducted a record review. Both concluded that Marshall could stand or walk for no more than a total of two hours in an eight-hour workday. R. 165, 169.

- In August 2017, Pat Chan, a stage agency physician, conducted a record review. Chan concluded that Marshall could stand or walk for about six hours of an eight-hour workday. R. 203.

-  In February 2018, Steve McKee, a stage agency physician, concluded that Marshall could perform light work and could stand and walk for about six hours of an eight-hour workday. R. 227, 230.

- In July 2019 and September 2019, William Fowler and Pat Chan, stage agency physicians, conducted additional record reviews. Both concluded that Marshall could perform light work and could stand and walk for about six hours of an eight-hour workday. R. 81, 85–88, 124–25.

- In May 2020, Jennifer Hussli, Marshall's treating physician, concluded that Marshall could sit for about 30 minutes at a time or about two hours of an eight-hour workday and sit for 10 to 15 minutes at a time or less than two hours throughout the day. R. 1521–22.

The ALJ rejected the opinions of Khan, Khurana, Przbyla, and Husseli, and she found the remaining opinions to be at least partially persuasive.

There were also several opinions on mental limitations:

- In January 2015, Douglas Soat, a psychologist, conducted a consultative examination. Soat concluded that Marshall had mild to moderate mental limitations. R. 1051–51.

- In February 2015, Thomas Knox, a state agency psychologist, conducted a record review. Knox concluded that Marshall had mild to moderate mental limitations. R. 171–72.

- In August 2017, Courtney Zeune, a state agency psychologist, conducted a record review. Zeune concluded that most of Marhsall's mental abilities weren't significantly limited, but his ability to respond appropriately to changes at work was moderately limited. R. 205.

- In February 2018, Joseph Edwards, a state agency psychologist, conducted a record review. Edwards concluded that most of Marhsall's mental abilities weren't significantly limited but his ability to respond appropriately to changes at work was moderately limited. R. 233.

- In July 2019, Deborah Pape, a state agency psychologist, conducted a record review. Among other things, Pape concluded that Marshall "may occasionally miss work" when he is experiencing increased anxiety. R. 89.

- In September 2019, Stacey Fiore, a state agency psychologist, conducted a record review. Fiore concluded that Marshall had some moderate mental limitations, but he could perform simple, routine work. R. 129–30.

The ALJ rejected Pape's opinion, but she found the remaining opinions to be at least partially persuasive.

There is no dispute that most of the opinions are either consistent with or less restrictive than the ALJ's RFC. But Marshall contends that the ALJ should have given greater consideration to the opinions of Husseli (his treating physician), Khurana and Przbyla (state agency physicians who conducted a review in 2015), and Pape (the state agency psychologist who conducted a review in July 2019). In evaluating medical opinions, the ALJ must consider how well supported the opinion is and how consistent it is with the evidence in the record. 20 C.F.R. § 416.920c(a*); Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

### 1. Treating physician

The ALJ gave several reasons for concluding that Husseli's opinion wasn't persuasive, including that she failed to explain the basis for her opinion, R. 30, which goes to how well

supported the opinion was. The ALJ also wrote that the opinion was inconsistent with numerous diagnostic tests and physical examinations showing no more than mild abnormalities, *id.*, which goes to consistency with the record evidence.

Marshall cites *Scivally v. Sullivan*, 966 F.2d 1070 (7th Cir. 1992), for the proposition that the ALJ should not have considered Husseli's failure to explain her opinion because the form she filled out didn't ask for that information. But *Scivally* says nothing about what information a physician should include in an opinion. The court in that case considered the format of two medical reports when determining whether the reports were inconsistent, *id.* at 1076–77, but the court didn't hold that ALJs are precluded from considering a medical source's explanation when determining the persuasiveness of an opinion. Rather, the court of appeals has acknowledged that checkboxes like those used by Husseli are "less useful" than a narrative explanation. *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019).

Alternatively, Marshall says that the state agency physicians also provided opinions in checkbox form, but the ALJ didn't find their opinions less persuasive for that reason. The important difference between the state agency opinions and Husseli's opinion is that the state agency physicians also provided a narrative explanation for their opinions, a fact that the ALJ pointed out repeatedly. *E.g.*, R. 28 ("The consultant supported these findings with explanations based on a detailed review of the evidence.").

As for the ALJ's reliance on diagnostic tests and examinations, Marshall raises three objections: (1) the ALJ didn't explain how she determined that the objective evidence undermined Husseli's opinion; (2) the ALJ wasn't entitled to interpret the medical records using lay opinion; and (3) the ALJ didn't explain why the records she cited were more persuasive than the "abnormal findings" in the record. Dkt. 19, at 14. As for the first objection,

6

perhaps the ALJ could have provided a more detailed explanation of the medical records. But reading her decision as a whole, which the court is required to do, *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004), the ALJ's reasoning is obvious: the objective evidence consistently showed no more than mild abnormalities that didn't support the more severe limitations found by Husseli. *See* R. 22 (summarizing the objective findings).[3]

As for Marshall's objection that the ALJ was relying on lay opinion, an ALJ is not prohibited from evaluating the medical records so long as she doesn't interpret evidence that requires expertise to understand. *See, e.g.*, *Prill v. Kijakazi*, 23 F.4th 738, 750 (7th Cir. 2022); *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). In any event, the ALJ was not simply relying on her own medical judgment. Rather, she was relying on the opinions of multiple physicians who interpreted the records the same way she did. R. 27–28.

As for Marshall's objection that the ALJ didn't explain why she was unpersuaded by the "abnormal findings," Marshall fails to identify any specific findings that the ALJ overlooked or that undermine the RFC. Again, the ALJ's conclusion—supported by multiple medical opinions—was that any abnormal findings were mild.

## 2. State agency physicians

Marshall contends that the ALJ failed to adequately support her conclusion not to credit the 2015 opinions of Khurana and Przbyla that Marshall could stand or walk for no more than

---

[3] One of the ALJ's observations was that Marshall had a normal gait and full strength in his lower extremities. Marshall contends that the ALJ failed to cite any specific medical records to support that observation, and Marshall is correct that the ALJ cited to exhibits generally rather than to page numbers in the passage discussing Huessli's opinion. But elsewhere in the decision the ALJ cited specific records to support that Marshall had both a normal gait and full strength in his legs. R. 14 (citing R. 691 and 1289). *See also* R. 23 (citing a four-page record in which the physician observed that Marshall was able to "stand up effectively from a sitting position" and "ambulate[] to and from his car without limitations") (citing R. 928–31).

a total of two hours in an eight-hour workday. Among other things, the ALJ again relied on the lack of support for these opinions in the medical records. The court has already concluded that substantial evidence supports the ALJ's decision not to credit a similar opinion from Marshall's treating physician for similar reasons, so the court concludes the ALJ's rejection of these opinions is also supported by substantial evidence.

### 3. State agency psychologist

State agency psychologist Pape offered an opinion on Marshall's ability to perform various mental tasks. Marshall relies solely on Pape's opinion that Marshall "may occasionally miss work" when he is experiencing increased anxiety. R. 89. The ALJ rejected that opinion because "there is no evidence in the treatment notes that the claimant would need to miss work" and that "the evidence shows that the claimant's treatment was relative[ly] effective in managing his mental health symptoms." R. 29.

Marshall says in his brief that he suffered from "significant psychological symptoms" that could cause him to miss work, including anxiety, low motivation, panic attacks, and feeling worthless. He cites a long string of records to support the presence of those symptoms, *see* Dkt. 19, at 20, but he points to nothing in the records suggesting that that the symptoms were so severe as to cause him to miss work or that any flareups are frequent enough to affect his ability to maintain employment. Instead, Marshall says, "[I]f these symptoms increased during times of worsened anxiety, it was possible that he would be unable to be present, working, and productive, during an 8-hour workday." *Id.* But that's not medical evidence; it's simply speculation. The ALJ didn't err in rejecting Pape's opinion.

**B. Restrictions in the RFC**

Marshall raises five arguments about the ALJ's RFC assessment. His first two arguments are about specific restrictions that he believes the ALJ should have included: (1) the ability to elevate his legs as needed; and (2) the ability to lie down as needed. But no medical source included either restriction in an opinion. Rather, Marshall relies on his own testimony to support both restrictions, so the court will consider the arguments in the context of discussing Marshall's subjective complaints.[4]

Marshall's other three arguments are not about specific restrictions that Marshall believes the ALJ should have included. Rather, Marshall contends that the ALJ failed to consider possible restrictions related to obesity, heart failure, and the combined effect of all his impairments.

**1. Obesity**

The ALJ acknowledged that Marshall's obesity may "aggravate[e] his musculoskeletal impairments and his breathing difficulties," but she concluded that the RFC "fully accounted for" the impairments related to Marshall's obesity. R. 24. Marshall objects on the ground that the ALJ provided "no analysis" for this conclusion, Dkt. 19, at 24, but he identifies no evidence that the court overlooked or that requires greater restrictions than what the ALJ found. So the court isn't persuaded that that the ALJ erred. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("An ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant

---

[4] Marshall says that his need to elevate his legs and lie down is supported by records indicating that he suffered from edema as well as knee pain and back pain. Dkt. 19, at 22. But the ALJ as well as multiple medical sources considered those issues and concluded that they were mild. Marshall doesn't challenge the ALJ's handling of that evidence, so Marshall's citation to that evidence doesn't help him.

did not explain how her obesity hampers her ability to work." (citations and internal quotation marks omitted)); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (rejecting argument that ALJ's failure to consider obesity required reversal when the plaintiff "does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk").[5]

## 2. Congestive heart failure

The ALJ acknowledged that Marshall has coronary artery disease, R. 21, but Marshall faults the ALJ for failing to specifically discuss his 2019 diagnosis for congestive heart failure. But a diagnosis and a disability are not the same thing. "The question is not whether [the claimant] has a particular diagnosis; the question is whether [he] has limitations that prevent [him] from working full time." *Salvino v. Saul*, No. 19-cv-422-jdp, 2020 WL 467902, at *3 (W.D. Wis. Jan. 29, 2020) (citing *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)).

Marshall points to no evidence that his diagnosis required restrictions beyond those found by the ALJ. Marshall identifies only one reference to the diagnosis in his more than 1,500 pages of medical records. The same physician who diagnosed the condition also wrote that a "recent chest x-ray does not show any convincing findings of congestive heart failure, and his exam today also does not suggest significant fluid overload." R. 863. The physician went on to opine that Marshall's leg edema was "mild" and "mainly related to his weight and

---

[5] Marshall cites medical records for the first time in his reply brief, but any argument based on those records was forfeited by failing to raise it in the opening brief. *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016). In any event, the records Marshall cites aren't helpful. For example, most of the cited records are simply recommendations to exercise and lose weight. R. 691 (exercise "will help with your back and leg pain"); R. 765 ("attempt to lose weight if you are able"); R. 1137 ("los[ing] weight . . . would help him alleviate some of his back and knee pain"). Those records suggest that obesity may be a cause of Marshall's pain, but they aren't evidence that Marshall's pain is worse than what the ALJ determined.

lower extremity veinous insufficiency." *Id.* The only treatment recommendation was to add beta blocker therapy. *Id.* Marshall doesn't identify any healthcare provider who determined that his congestive heart failure caused additional limitations, including Husseli, who provided her opinion after the diagnosis.

Marshall instead cites a string of records discussing his cardiomyopathy (a weakened heart muscle) and his symptoms of fatigue and shortness of breath. Dkt. 19, at 26. But the ALJ considered those issues. She reviewed the test results, the medical opinions, and the conservative treatment recommendations of Marshall's healthcare providers for his cardiomyopathy. R. 21, 25, 28, 30. The ALJ wrote that there "no evidence of significant associated complications other than the claimant's coronary artery disease and cardiomyopathy." R. 21. As for shortness of breath, the ALJ wrote that Marshall had reported that he could perform his daily activities without acute shortness of breath, that he didn't receive regular treatment for that issue, and his lungs were often clear on examination. R. 21. However, the ALJ included a restriction related to exposure to dust, fumes, odors, gases, and poor ventilation to account for Marshall's breathing and cardiac impairments. R. 30. Marshall doesn't challenge the ALJ's handling of those issues.

Marshall cites *Perkins v. Astrue*, 498 F. App'x 641, 643–44 (7th Cir. 2013), for the proposition that a failure to discuss a congestive heart failure diagnosis requires reversal. But *Perkins* isn't instructive. The ALJ didn't simply fail to acknowledge a diagnosis in *Perkins*; the problem was that the ALJ failed to consider the *symptoms* that the claimant suffered because of his congestive heart failure. The ALJ did consider Marshall's symptoms in this case, so the ALJ wasn't required to expressly discuss Marshall's diagnosis.

11

### 3. Restrictions for combined impact of all impairments

Marshall's argument about the combined impact of all his impairments suffers from the same problem as his other arguments. Specifically, he doesn't identify any evidence that the ALJ overlooked or additional restrictions that she should have included. So Marshall hasn't shown that he is entitled to a remand on this ground.

## C. Subjective complaints

The ALJ summarized Marshall's subjective complaints, including that he has pain walking more than 100 feet, that he spends most of the time in his reclining chair or lying in bed, and that he frequently elevates his feet. R. 20. As already noted, Marshall contends that the ALJ didn't give adequate reasons for declining to credit his statements about needing to elevate his feet and lie down. Marshall also contends more generally that the ALJ failed to adequately evaluate his subjective symptoms, but Marshall doesn't identify any subjective symptoms other than his knee and back pain, so the court will limit its consideration to those symptoms.

In declining to credit all of Marshall's subjective complaints, the ALJ relied primarily on Marshall's treatment history and his activities of daily living. R. 23 and 25–26. The ALJ didn't discuss specific subjective complaints she was discrediting, but she didn't have to: "an ALJ's credibility findings need not specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). And the standard for reviewing the ALJ's evaluation of the claimant's subjective complaints is deferential. The claimant must show that the determination is "patently wrong," meaning that it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). The court concludes that the ALJ was entitled to rely on Marshall's treatment history, so it isn't necessary to consider Marshall's activities of

12

daily living. *See Primm v. Saul*, 789 F. App'x 539, 545–46 (7th Cir. 2019) (affirming ALJ's credibility determination even though only some of the reasons were supported).

The ALJ provided four reasons based on Marshall's treatment history to support her credibility determination:

- Marshall's treatment had been relatively conservative; he treated his knee and back pain with physical therapy, medication, a TENS unit, and steroid injections; providers also recommended that Marshall lose weight;

- there were no "severe findings" by Marshall's medical provider related to his back;

- Marshall's treatment was "somewhat helpful" in relieving Marshall's symptoms;

- Marshall testified that he used a cane daily, but his treatment notes didn't document regular use.

R. 21.

It is well established that an ALJ's credibility determination may be informed by a claimant's conservative treatment, the lack of objective evidence, the effectiveness of treatment, and inconsistencies between the claimant's statements and his medical records. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (relying on inconsistencies between claimant's testimony and the record); *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (relying on conservative treatment history); *Olsen v. Colvin*, 551 F. App'x 868, 874–75 (7th Cir. 2014) (same). For example, in *Prill*, 23 F.4th at 749, another case involving knee and back pain, the court concluded that the ALJ was entitled to consider that the claimant didn't have surgery and treated her pain with physical therapy, medication, and steroid injections, just as in this case. The court distinguished the case that Marshall cites, *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013), because the claimant in *Schomas* "underwent major surgery" during the relevant time period.

13

Marshall says that the ALJ in this case "did not cite to any evidence that surgery was appropriate." Dkt. 19, at 29. But that's exactly the point. The ALJ didn't rely on Marshall's refusal to undergo surgery that healthcare providers recommender; rather, she relied on his providers' decisions not to recommend surgery or any other more aggressive treatment. *Prill* is on point.

Marshall also says that the injections provided only temporary relief, citing two records related to injections for his back. R. 808, 828. The ALJ cited a more recent record in which Marshall stated that an injection for his right knee was "very effective," and he wanted a similar injection for his left knee. R. 1504. Regardless, even if the relief from the steroid injections was only temporary, the ALJ was entitled to find that Marshall's knee and back pain wasn't as limiting as he alleged, based on the other evidence such as Marshall's conservative treatment history, the lack of objective evidence supporting his subjective complaints, and the inconsistencies between his statements and the records. The ALJ explained her credibility determination and provided some support for it, so the court must uphold the determination.

ORDER

IT IS ORDERED that that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered July 25, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

14